[Civ. No. 9203.   Third Dist.   Oct. 24, 1957.]

FRANK HABERHAUER, Petitioner, v. CLERK OF THE SUPERIOR COURT OF MENDOCINO COUNTY, Respondent.

Michael S. Jarboe for Petitioner.

Edmund G. Brown, Attorney General, and James M. Sanderson, Deputy Attorney General, for Respondent.

VAN DYKE, P. J.—Herein the petitioner in mandate seeks a writ, directed to the clerk of the Superior Court of Mendocino County, commanding that officer to prepare and file a record on appeal from a judgment of conviction based on a jury verdict finding petitioner guilty of violating section 288 of the Penal Code.

By his original petition herein it was alleged that judgment against him was pronounced March 9, 1956; that petitioner, upon rendition of judgment, gave oral notice of appeal; that on March 11, 1956, petitioner, while confined in the Mendocino County jail, prepared and mailed a written notice of appeal to the superior court and requested that, in addition to the normal record, the record in its entirety be prepared; that petitioner did not receive the record on appeal and, therefore, on October 2, 1956, while confined at Folsom Prison, he prepared a third notice of appeal and mailed the same to the Honorable Hale McCowen, Judge of the Superior

Court of Mendocino County; that the clerk of the court said he had only one notice of appeal that had been received and that said notice was received October 3, 1956, too late to effectuate an appeal. Petitioner further alleged that he was the owner of the Fort Bragg Trading Post at Fort Bragg, California; that persons known and unknown to him had instigated and were carrying out a scheme or plan to dispossess him of his ownership of said business through keeping him in prison for a crime he had not committed; and that a part of the plan was to prevent petitioner's obtaining an appeal from his conviction. Petitioner stated he had been fraudulently convicted.

This court considered that the original petition did not warrant the issuance of an alternative writ for the reason that it did not allege in detail how and by what means petitioner had mailed a notice of appeal from the county jail. Deeming the petition, however, sufficient to afford opportunity for amendment, petitioner was granted time to amend if he desired and the defects in his petition were pointed out to him. Within the time allowed petitioner filed an amendment containing the following matters: That after pronouncement of judgment petitioner had given oral notice of appeal in open court to the court clerk; that thereupon the clerk had instructed petitioner to have his attorney file written notice or to file his own written notice of appeal in addition to the oral notice; that thereupon petitioner instructed his attorney to give the necessary notice of appeal ''as agreed upon in the contract for retention of counsel.'' (At this point the amendment referred to Exhibit A attached thereto which appears to be, not a contract for retention of counsel, but a copy of a complaint filed by petitioner with the State Bar, wherein he charged that his attorney had been paid $1,500 under an oral contract which specified that petitioner ''would be guaranteed a dismissal on his case before the Superior Court of Mendocino County, State of California, or that complainant would be given a refund of $1,000.00 from said attorney and or that said attorney would enter an appeal in the complainant's case should the situation be that the complainant was found guilty in the Superior Court of Mendocino County.'') The documentary exhibit contains assertions that the complainant is contending the attorney had committed fraud in accepting the retainer fee of $1,500 in that he had already been retained by persons unknown to complainant at an unknown fee and that his obligations were to said

unnamed clients rather than to the complainant; that the attorney had agreed to help the unnamed clients obtain the complainant's business in Fort Bragg, California, known as Frank's Trading Post; that petitioner was informed and believed that certain persons living in Fort Bragg had entered into a conspiracy to force complainant from his business as operator and owner so that said persons could gain control and eventual ownership of the trading post; that his attorney had entered into said conspiracy with intent to wilfully and fraudulently cause complainant to be convicted of a crime that he was not guilty of, being violation of section 288 of the Penal Code; that the attorney, having a special and selfish interest, had no intention of giving a proper defense in complainant's case and, in fact, had failed to protect him, failed to preserve his procedural right to due process with the purpose of causing his conviction and sentencing so that he would be imprisoned and thereby not be in a position to operate or control his business; that the records of the court would show that his attorney did not enter objections to testimony, did not argue a motion to dismiss pursuant to section 995 of the Penal Code, did not present witnesses that complainant asked for before his trial, did not present proof of his innocence, did not cite the court for prejudicial misconduct, did not cite the district attorney for prejudicial misconduct, did not submit instructions applicable to complainant's defense, did not present proper argument to the court, did not make a motion for a new trial or motion to arrest judgment, did not file a notice of appeal even though complainant had entered into a contract that provided a fee for filing a notice of appeal, did not order the record to be prepared in the case on appeal, did not refund any part of the retainer fee as was agreed to in said contract, did not give complainant a proper representation or assistance such as he was entitled to under the laws of the state, and, finally, asserting that the question might ''arise, why did complainant not object to the court that his attorneys were not properly protecting his rights,'' complainant asserted that that which the law makes essential in proceedings involving the deprivation of life and liberty cannot be dispensed with or affected by consent of the accused much less by his failure when on trial to object to unauthorized methods.

Petitioner's amendment to his petition then proceeded to assert that in addition to relying upon his attorney to file a notice of appeal and after he had become distrustful of the

attorney, he, himself, wrote a letter containing a notice of appeal while confined in the Mendocino County jail so as to protect himself in the event that his attorney did not file such notice. He alleged that the letter he had written from the county jail, containing a written notice of appeal and addressed to Honorable Hale McCowen, Judge of said court, was mailed from the jail under the rules and regulations therein; that it was mailed by petitioner "handing the letter to the same deputy sheriff who took from defendant's personal possession a check in the amount of $125.00"; that if Judge McCowen should deny receipt of the letter and notice of appeal it might be due to the fact that the deputy sheriff who was handed the letter for mailing wilfully and with intent deliberately refused to mail the letter due to the trouble that petitioner had caused said deputy sheriff over the check that the deputy had taken from him; that this check had caused considerable trouble at the jail as the deputy sheriff claimed that petitioner had not handed over a check to him; that, however, when petitioner was transferred to prison other deputy sheriffs at the jail had proved defendant's claims as to the check to be correct and that a draft in the amount of the check was drawn and made payable to petitioner; that other action against the deputy sheriff had been taken by the sheriff; that these matters could have resulted in the deputy sheriff taking opportunity for personal retaliation against petitioner by failing to mail the notice of appeal.

Upon receipt of the amendatory pleading, this court issued its alternative writ of mandate and, responsive thereto, the attorney general, representing the respondent clerk of the superior court, filed an answer and return to the alternative writ from which the following appears: That respondent clerk had never received a notice of appeal nor had one been filed within 10 days subsequent to March 9, 1956, the day of the pronouncement of judgment; that no notice of appeal had been received by the judge of the court that presided at the trial within said 10 days; that, according to respondent's information and belief, no notice of appeal had been delivered at any time within the limits set by the applicable rule on appeal by petitioner to any officer or employee of Mendocino County for transmittal to the superior court or the clerk or judge thereof; that a purported written notice of appeal by petitioner had been received by the judge on or about October 3, 1956, which had then been delivered to the respondent clerk;

that said purported notice of appeal was the only notice of appeal that had been filed in the matter by or on behalf of petitioner; that no oral notice of appeal had been given at any time; that petitioner, while confined in the State Prison at Represa, had, on October 2, 1956, mailed a notice of appeal to Judge McCowen and had received from respondent clerk a letter informing him that only one notice of appeal had been received by the court which was the one of October 3, 1956. Respondent denied all other allegations of the petition and the amendment thereto not so expressly admitted.

To this pleading by respondent herein, petitioner filed an additional pleading denominated a traverse brief, asserting, among other things, that he had prepared a notice of appeal while in the county jail and had handed the same to a deputy sheriff at the jail who was known as "Tiny", which notice of appeal had been placed in an envelope addressed to the trial judge. Petitioner further alleged that when he had first been confined in the county jail he had had in his possession a check for $125; that he was told to endorse the check by the radio operator at the jail (name unknown) who then said that the check would be cashed so that petitioner would have cash on hand for his needs; that, on March 13, 1956, when petitioner was about to be transported to state prison said "Tiny" informed him that he had but $2.25 in his jail account, whereupon he asserted that he had endorsed the $125 check for cashing; that "Tiny" said he was wrong as there was no such money to his credit, whereupon an argument ensued between petitioner and "Tiny" which caused the radio operator to overhear the conversation; that the operator intervened in the argument, saying that petitioner had in fact had a check for $125 which he, the operator, told petitioner to endorse and that said operator having so stated asked what the jailers had done with petitioner's money that, after a delay of several minutes, two checks were made out to the order of petitioner, one for $2.25 and the other for $125; that both checks were made out on the jail's bank and bore certain stated numbers, being drawn on a savings bank of Mendocino County, Ukiah, California; that petitioner, therefore, claimed that the $125 "or near loss of same has caused the Notice of Appeal or letter of appeal from being mailed to the Court if the case is that the court did not receive same."

After the filing of said final pleading, this court appointed Honorable Fred D. Goss, Judge of the Ukiah Judicial District,

Ukiah, California, to act as referee and to take evidence concerning the issues raised by the pleadings. At that hearing, petitioner testified that on March 11, 1956, he had prepared two notices of appeal, placed them in envelopes, one addressed to the Honorable Hale McCowen, Judge of the Superior Court, and one addressed to W. J. Broaddus, Clerk of the Superior Court of Mendocino County; that after preparing these notices of appeal he placed the envelopes on the door of his cell between the bars and that a deputy sheriff, whom he did not recognize and could not describe, picked the letters up from the cell door and that thereafter petitioner did not see the letters containing his notices of appeal. Concerning the variance between his testimony that he did not know and could not describe the deputy who picked the letters from the cell door and his allegations that he had handed a notice of appeal to "Tiny" petitioner testified that his pleading wherein he identified the deputy sheriff to whom he had given his notice of appeal was not true; that the pleading that he had filed had not been typed by him and that some of the statements included were not his statements. He further testified that on the same day of March 11, 1956, while in jail, he had written two other letters, one to a Mrs. Wilbur and one to his brother; that the reason he had prepared his own notices of appeal was that he had become distrustful of his attorney. Petitioner's brother testified at the hearing that he had received a letter from petitioner and the letter was introduced in evidence. It instructed his brother to make arrangements with petitioner to draw money from his account and that, having obtained the money, the brother was to have petitioner's trial attorney take his case up on appeal. The letter asserted that petitioner knew he had a very good chance on appeal as his attorney had told him he had new matters to bring up. There is not a word in the letter to the brother concerning his oft-repeated distrust of his attorney and the serious charges that petitioner had so frequently made against him. No further evidence was introduced in behalf of petitioner.

In the letter which petitioner mailed to his brother, although asking the brother to procure funds with which to obtain appellate service of his trial attorney, the petitioner makes no mention of having already paid the attorney to prosecute the appeal as averred by him in the pleadings herein and in the proceedings he brought against the attorney before the State Bar. On behalf of respondent, the chief

jailer and two deputy jailers of the Mendocino County jail testified that they could not recall having received any letters from petitioner. They further testified that all letters sent through the proper channels of the Mendocino County jail were censored by either the jailer on duty at the time the letter was received from the prisoner or by the chief jailer at the time he came on duty; that all such letters were censored; that after such letters were censored the jailor censoring the letters would enter the addressee's name and the date that the letter was received from the prisoner on the back of the prisoner's booking sheet. The booking sheet of petitioner was introduced in evidence and on the back of it was a notation that petitioner on March 9, 1956, had mailed a letter to Mrs. Wilbur. No other letter was noted on the booking sheet as having been mailed by petitioner, although it appears without dispute that a letter had been mailed by petitioner to his brother as before stated.

■ The referee found that petitioner did not prepare a notice of appeal and of course it followed that additional findings were made that he did not mail such a notice or deliver such a notice to any custodian in the jail. If this finding is to be adopted by this court then the necessary result is the discharge of the alternative writ heretofore issued and the denial of the peremptory writ sought.

It is to be noted that by his pleadings herein, petitioner specifically identified the deputy to whom he allegedly gave his notice of appeal. In the amendment petitioner stated that he had prepared his notice of appeal and handed it to the same deputy with whom he had trouble over a $125 check. In his traverse brief he alleged that he had handed his notice of appeal to a deputy sheriff named "Tiny" who, he alleged, was a deputy with whom he had trouble concerning the check. In his testimony before the referee the petitioner refused to identify or describe the person to whom he gave his notice of appeal, but testified that he could remember only that it was a deputy sheriff and that he was not able to recall anything about the deputy except that he was a large man. In his testimony he first stated that he had read the amendment to the petition and the traverse brief prior to their having been filed. He later stated that he had not read them because he had not had time to read them and, therefore, had no knowledge of the contents of these pleadings when they were filed. He testified that the statements particularly identifying the deputy to whom he allegedly gave his notice of appeal

were not in accordance with his memory at the time of the hearing. He testified at the hearing that he had prepared four letters simultaneously and that two of these contained notices of appeal, one addressed to the judge of the court and one addressed to the county clerk. It was stipulated that if called the judge of the court would testify that he had never received such a letter or any letter containing a notice of appeal save the one of October 2, 1956. It was shown also that the alleged letter to the county clerk had never been received by him. The prisoner's log did not show the mailing of a letter to the judge or to the clerk. He testified that the reason he prepared his own notices of appeal was because he had become distrustful of his attorney, although his letter, as before noted, requested his brother to retain the same attorney for the purpose of prosecuting an appeal and said nothing about his distrust of him. Petitioner admitted on cross-examination that he had committed four felonies prior to the one for which he is now imprisoned.

It is apparent that the issue before this court is now as to the credibility of petitioner. The referee who had the opportunity of observing him on the stand, as well as of hearing and viewing the other witnesses who were sworn for the respondent, did not believe petitioner when he testified that he had prepared notices of appeal and undertook to mail them out to the judge and the respondent clerk.

In view of the noted discrepancies between the allegations of petitioner in his pleadings and his testimony at the hearing and in view of his evasiveness when, under cross-examination, these disparities were called to his attention, this court feels that the findings of fact made by the referee are supported by the great weight of the evidence produced at the hearing and that they ought to be adopted by this court. We accordingly do so.

The alternative writ heretofore issued is discharged; the peremptory writ asked for is denied.

Peek, J., and Schottky, J., concurred.